**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DARRELL TAYLOR**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.    22-1242**

**E. DUSTIN BICKHAM, WARDEN**                         **SECTION: "T"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Darrell Taylor, is a convicted inmate currently incarcerated at the Dixon Correctional Institute in Jackson, Louisiana.    On December 6, 2016, Taylor was charged by bill of indictment St. Charles Parish with distribution of heroin in violation of La. Rev. Stat. § 40:966A.[1]    On June 20, 2017, after a two-day trial, he was found guilty as charged.[2]    On September 12, 2017, Taylor was sentenced to 25 years imprisonment with the first 10 years

---

[1]    State Rec., Vol. 1 of 6, Bill of Indictment, 12/6/16.

[2]    State Rec., Vol. 1 of 6, Trial Minute Entry, 6/19/17; Trial Minute Entry, 6/20/17; Verdict, 6/20/17; State Rec., Vol. 2 of 6, Trial Transcript, 6/19/17; State Rec., Vol. 3 of 6, Trial Transcript (con't), 6/19/17; Trial Transcript, 6/20/17; State Rec., Vol. 4 of 6, Trial Transcript (con't), 6/20/17.

to be served without the benefit of probation, parole or suspension of sentence and to run concurrent with his sentence in another case.[3]

On direct appeal, Taylor's appointed counsel asserted the following claims: (1) his sentence was excessive; and (2) his trial counsel was ineffective at sentencing.[4]    On October 17, 2018, the Louisiana Fifth Circuit affirmed Taylor's conviction and amended his sentence by deleting the restriction on parole.[5]    On January 3, 2019, the trial court amended petitioner's sentence to delete the parole restriction.[6]

On May 20, 2019, the Louisiana Supreme Court denied his related writ application without reasons.[7]

On August 11, 2019, Taylor filed an application for post-conviction relief with the trial court.[8]    In that application, he asserted that his trial counsel was ineffective in failing to adequately investigate the case, impeach witnesses and move for a new trial and/or for post-verdict judgment of acquittal.    He further asserted that his appellate counsel was ineffective for failing to assign as errors on appeal insufficiency of the evidence and improper admission of evidence of his prior drug conviction.    On August 28, 2019, that application

---

[3]  State Rec., Vol. 1 of 6, Minute Entry, 9/14/17; State Rec., Vol. 4 of 6, Sentencing Transcript, 9/12/17.

[4]  State Rec., Vol. 4 of 6, Appeal Brief, 2018-KA-0126, 5/25/18.

[5]  *State v. Taylor*, 18-KA-126, (La. App. 5 Cir. 10/17/18), 258 So. 3d 217; State Rec., Vol. 4 of 6.

[6]  State Rec., Vol. 4 of 6, Order of Correction of Sentencing Minute Entry, 7/3/19.

[7]  *State v. Taylor*, 2018-KO-1914 (La. 5/20/19), 271 So. 3d 200; State Rec., Vol. 6 of 6.

[8]  State Rec., Vol. 4 of 6, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petitioner's Application for Post-Conviction Relief.    Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).    Taylor certified that he placed his post-conviction application and supporting memorandum in the mail on August 11, 2019.

was denied for failure to comply with the requirements of La. Code Crim. P Art. 926.[9]    On September 11, 2019, Taylor filed a request to resubmit his application for post-conviction relief with the deficiency cured.[10]    By order dated September 26, 2019, the state district court denied Taylor's request finding that he failed to include a copy of a judgment of conviction as required by Article 926(A).[11]

Taylor filed a related writ application with the Louisiana Fifth Circuit, which was granted on November 27, 2019.[12]    The appellate court remanded the matter for the state district court to either address the merits of Taylor's application for post-conviction relief or allow him to supplement it with the judgment of conviction.[13]

On December 15, 2019, Taylor filed a motion to supplement his application for post-conviction relief and a motion for an evidentiary hearing.[14]    When the state district court did not rule on his motions, Taylor filed a writ application for mandamus to compel the state district court to do so.[15]    On June 10, 2020, the Louisiana Fifth Circuit granted a writ of mandamus and instructed the state district court to rule on the motion within 30 days.[16]

---

[9]  State Rec., Vol. 4 of 6, Order Denying Petitioner's Application for Post-Conviction Relief, 8/28/19.

[10]  State Rec., Vol. 4 of 6, Petitioner's Request to Resubmit Application for Post-Conviction Relief with Deficiency Cured, 9/16/19.

[11]  State Rec., Vol. 4 of 6, Order Denying Petitioner's Application for Post-Conviction Relief, 9/24/19.

[12]  *State v. Taylor,* 19-KH-535, 2019 WL 6358096 (La. App. 5 Cir. Nov. 27, 2019); State Rec., Vol. 5 of 6. The state court record does not include a copy of the writ application.

[13]  *Id.*; State Rec., Vol. 5 of 6.

[14]  State Rec., Vol. 5 of 6, Petitioner's Request to Supplement Application for Post Conviction Relief and Request for Evidentiary Hearing, 12/23/19.

[15]  The state-court record does not include a copy of the writ application.

[16]  State Rec., Vol. 5 of 6, La. 5th Cir Order, 20-KH-172, 6/10/20.

The Louisiana Fifth Circuit granted Taylor's subsequent writ application when the state district court did not comply with its prior order.[17]     On November 30, 2020, the state district court granted Taylor's motion to supplement and ordered the State to file procedural objections.[18]     On July 1, 2021, the state district court denied Taylor's application for post-conviction relief.[19]

The Louisiana Fifth Circuit denied relief on October 12, 2021.[20]     The Louisiana Supreme Court denied Taylor's related writ application finding he failed to show ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).[21]

On April 29, 2022, Taylor filed the instant application for habeas corpus relief.[22]     In that application, Taylor claims: (1) ineffective assistance of counsel at sentencing; (2) excessive sentence; (3) ineffective assistance of trial counsel; (4) ineffective assistance of appellate counsel.

The State contends that Taylor's claims are meritless.[23]     Taylor filed a reply

---

[17]   State Rec., Vol. 5 of 6, La. 5th Cir Order, 20-KH-231, 8/3/20.     A copy of the related writ application is not included in the record.

[18]   State Rec., Vol. 5 of 6, Scheduling Order, 11/30/20.

[19]   State Rec., Vol. 5 of 6, Order Denying Supplemental Application for Post-Conviction Relief, 7/1/21.

[20]   *State v. Taylor*, 21-KH-597, 10/12/21.     The order is not included in the state court record nor is a copy of the related writ application.

[21]   *State v. Taylor*, 2021-KH-01931 (La. 2/22/22), 333 So. 3d 438.

[22]   Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.

[23]   Rec. Doc. 10.

reiterating his claims.[24]

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."    28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a State court shall be presumed to be correct.    The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court

---

[24]  Rec. Doc. 13-1.

confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405B06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Id.* (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts— from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. §

2254(d).    With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply.    *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003).    Instead, the federal courts review those claims under pre-AEDPA de novo standards of review.    *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

*Analysis*[25]

**A.    Excessive Sentence (Claim Two)**

Taylor claims that his 25-year sentence is a "virtual life sentence" and is excessive under Eighth Amendment and Louisiana Constitution in light of his advanced age, ill-health, and the circumstances surrounding the offense.    These claims were considered on the merits and rejected by the Louisiana Fifth Circuit on direct appeal.    The appellate court explained:

1. Excessive Sentence

In this assignment of error, defendant argues that his twenty-five-year sentence for distribution of heroin is unconstitutionally excessive.    He argues that the sentence shocks one's sense of justice due to his age of seventy, fourth-grade level of education, addiction to heroin, and ill health.    He maintains that the evidence presented at trial only showed that he was a user of heroin and not a dealer, and the circumstances surrounding the offense require a downward departure of his twenty-five-year sentence.    Defendant requests that this Court vacate his sentence to allow him to file a motion for downward departure from the mandatory minimum sentence or remand for resentencing for the trial court to consider his "elder" status.

The State responds in brief that defendant's twenty-five-year sentence

---

[25]    For ease of analysis, this Report and Recommendation addresses Taylor's claims in a different order than they were listed in his federal application.

of imprisonment was not unconstitutionally excessive, and the record supports the sentence imposed.   It argues the seriousness of the crime of distribution of heroin, defendant's criminal history as an eighth felony offender, and the circumstances of this case do not warrant the imposition of a lesser sentence even in light of defendant's age and failing health, neither of which, the State points out, have impeded his criminal activity.   It asserts that the trial court considered both defendant's age and health in imposing the sentence, and the sentence was not an abuse of the trial court's sentencing discretion.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment.   Although within statutory limits, a sentence can be reviewed for unconstitutional excessiveness.   *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4.   A sentence within the statutory limits may still violate a defendant's constitutional right against excessive punishment.   *State v. Scie*, 13-634 (La. App. 5 Cir. 1/15/14), 134 So.3d 9, 11.

A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.   *Id.*   A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622, *writ denied*, 05-0244 (La. 12/9/05), 916 So.2d 1048.

A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.   *State v. Dorsey*, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130, *writ denied*, 08-1649 (La. 4/17/09), 6 So.3d 786.   The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.   *Id.*   The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.   *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656.   In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts.   *Id.*

In the present matter, defendant was convicted of one count of distribution of heroin in violation of La. R.S. 40:966(A).   Accordingly, under the sentencing provisions in effect at the time defendant committed the offense, defendant faced a term of imprisonment at hard labor for not less than ten nor more than fifty years, with at least ten years to be served without the benefit of probation or suspension of sentence.   *See* La. R.S. 40:966(B)(4)(a). The trial court sentenced defendant to twenty-five years in the Department of Corrections, with ten years of the sentence to be served without benefit of

probation, parole, or suspension of sentence.[5]

[5] *See* Errors Patent discussion, *infra*.

When defendant appeared for sentencing, Ursula Ingram, the mother of defendant's daughter, advised the trial judge during a bench conference that defendant's daughter was devastated by his conviction and had asked her to speak to the court.    Ursula stated that on the day of defendant's arrest, his daughter was at defendant's residence giving defendant money that he had borrowed from Ursula.    Ursula acknowledged defendant's "bad" background, but stated that he was "really actually changing."

Also prior to sentencing, trial counsel requested the trial court to impose a lenient sentence and to consider defendant's age and history of mental illness, addiction, and the physical infirmities he suffered with at the time of trial.    She argued that while he had prior convictions, the instant conviction was not a crime of violence.    She maintained that defendant simply handed Tyrone a small amount of heroin, and defendant was not a dealer.    Trial counsel contended that even if the minimum ten-year sentence was imposed, defendant still faced a life sentence, which would also weigh heavily on taxpayers to provide for defendant's medical costs in prison.    In support of her argument, trial counsel asked that a medical summary outlining defendant's serious health issues, which was previously provided to the State and the parole officer who prepared the PSI report, be placed in the record under seal, which the trial court granted.

The State conceded that defendant had a significant medical history, and that the cost of incarceration should be considered, but nonetheless, the instant conviction was defendant's eighth felony offense, one of which was a crime of violence (armed robbery).    The State noted that when this crime occurred, defendant was on probation or parole for a prior conviction of attempted possession with intent to distribute heroin, which had been reduced from possession with intent to distribute heroin.    It contended that defendant was never employed, never sought drug rehabilitation treatment, nor did he pursue an education.    The State referenced the severity of the current opioid epidemic and argued that to impose a lenient sentence would send an inappropriate message.

The trial judge noted that the maximum term of imprisonment for distribution of heroin was fifty years in the Department of Corrections and noted that the PSI report recommended what she thought was a "pretty lenient" sentence given defendant's status as an eighth felony offender.    The trial judge stated that two things currently harming the community were drug dealers and violent offenders.    She stated that she was inclined to sentence defendant to 30 years, but ultimately followed the recommendation of the PSI report and sentenced him to twenty-five years imprisonment in the Department of Corrections, with ten of those years to be served without

benefits.

On appeal, defendant argues that the trial court failed to consider the nature of the crime and his background in imposing his sentence. He asserts that his sentence is excessive as he suffers from congestive heart failure, hypertension, atrial fibrillation, coronary artery disease, hepatitis C, and is seventy years old. He also contends that he has a fourth-grade level of education and a heroin addiction.

In brief, defendant cites to *State v. Mosby*, 14-2704 (La. 11/20/15), 180 So.3d 1274 (per curiam ), where the Louisiana Supreme Court found an enhanced sentence of thirty-years imprisonment, the minimum required under the habitual offender statute in effect at the time, for a seventy-two-year-old grandmother convicted of cocaine distribution and adjudicated a multiple offender, was unconstitutionally excessive and amounted to "the purposeful imposition of pain and suffering." The court vacated the mandated sentence and found a departure from the mandatory minimum was required based on the defendant's present age, her non-violent felony offenses, severe infirmities, and her addiction to crack cocaine at age forty-eight, which resulted in her amassing felony charges beginning at age fifty-two. There, the defendant cared for her mother and daughter and had prior convictions of possession of Schedule II controlled dangerous substances, possession of LSD, and unauthorized entry of a place of business. *See also State v. Mosby*, 14-0215 (La. App. 4 Cir. 11/26/14), 155 So.3d 99, 111-13.

Defendant also cites *State v. Ellis*, 14-1170 (La. App. 4 Cir. 3/2/16), 190 So.3d 354, 372-73, writ denied, 14-1170 (La. 5/13/16), 191 So.3d 1057. In that case, the defendant, who was in his fifties, was found guilty of two counts of simple burglary of an inhabited dwelling and was adjudicated a fourth felony offender with prior convictions of possession with intent to distribute cocaine and possession of phencyclidine ("PCP") in 1989, simple burglary of a hospital and its dialysis unit in 1998, and theft of a laptop in 2004. The defendant was sentenced to a mandatory minimum sentence of life imprisonment pursuant to La. R.S. 15:529.1. *Id.*

On appeal, the Fourth Circuit found that the record was lacking as to the defendant's marital or family history, educational level, employment history, or the status of his medical or mental health, including his addiction history or regarding the likelihood of his rehabilitation. Neither the defendant nor any witnesses testified on his behalf, and thus, little was known besides his past crimes. The trial court also failed to order a PSI report. As a result, the court of appeal found that no sentencing factors were discussed or identified by the sentencing court, which gave great weight to the defendant's most recent crime of simple burglary of an inhabited dwelling. *Id.*, 190 So.3d at 375. Therefore, because of the scrutiny to be given to a life sentence, it found that the trial court failed to give proper consideration to the

defendant's motion for downward departure, vacated his sentence, and remanded the matter for the trial court to hold a meaningful sentencing hearing.    *Id.*, 190 So.3d at 373-78.

Defendant also cites *State v. Hall*, 14-1046 (La. App. 4 Cir. 5/13/15), 172 So.3d 61, 70-72, *writ denied*, 2015-0977 (La. 6/5/15), 169 So.3d 348.    In that matter, the Fourth Circuit followed *Mosby* and similarly raised concerns about a defendant's advanced age being a mitigating factor in sentencing. The defendant in *Hall* was convicted of possession of a small amount of cocaine and was habitually billed based on a prior conviction for drug possession and two simple burglary convictions, all non-violent crimes.    As a result of his habitual offender status, the defendant was sentenced to the mandatory minimum of twenty years imprisonment.    *Id.*    Noting that the defendant was fifty-six years old, had a life-long drug addiction, and was homeless for much of his life, the court considered that even a twenty-year sentence would mean the defendant would likely die in prison, and "[a]s he advances in age, the cost of imprisoning him will only increase." *Id.*    Finding that the trial court "failed to sentence [the defendant] in accordance with La. C.Cr.P. art. 894.1(C), and in light of the circumstances of the [d]efendant's life, addiction, and history as a non-violent offender," the Fourth Circuit vacated the defendant's sentence and remanded the case for resentencing.    *Id.*

The failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a review of the sentence for unconstitutional excessiveness only.    *State v. Brown*, 15-96 (La. App. 5 Cir. 9/15/15), 173 So.3d 1262, 1269, *writ denied*, 15-1872 (La. 10/10/16), 207 So.3d 403.    Here, trial counsel objected to the sentence, but did not state any specific grounds for the objection, and no motion to reconsider defendant's sentence was filed.    Therefore, defendant did not preserve whether the trial court complied with La. C.Cr.P. art. 894.1, including whether his age and illness were mitigating factors, and is precluded from raising it on appeal.    Nevertheless, the Court may review defendant's sentence for unconstitutional excessiveness.    *State v. Collins*, 09-283 (La. App. 5 Cir. 12/8/09), 30 So.3d 72, 86, *writ denied*, 10-0034 (La. 9/3/10), 44 So.3d 696.    *See also State v. Lemon*, 06-721 (La. App. 5 Cir. 1/30/07), 951 So.2d 1177.

Upon review, we find that defendant's sentence is not unconstitutionally excessive given the nature of the crime in this case, the background of defendant, and sentences imposed for similar crimes by this and other courts.    *See Pearson*, *supra*.    Regarding the nature of the crime, defendant and his brother were well-known distributors of heroin who did so from their residence.    Defendant argues that he was only present that day, and that Tyrone was the dealer, as evidenced by the fact that defendant only handed one of the seven tinfoil packets to Tyrone.    However, as previously noted, defendant participated in the transaction, and had a past conviction in

2014 for attempted possession with the intent to distribute heroin.

In *State v. Williams*, 16-600 (La. App. 5 Cir. 6/29/17), 224 So.3d 1194, 1198, *writ denied*, 17-1332 (La. 4/27/18), 241 So.3d 306, this Court noted:

> Though defendant was convicted of simple possession, the facts of this case and defendant's history suggest that he is involved in heroin distribution.   It is difficult to overstate the serious nature of any crime involving heroin given the danger the substance presently poses to public health.   According to the Centers *for Disease Control and Prevention, "[h]eroin-related overdose deaths [in the United States] have more than quadrupled since 2010."

Therefore, although distribution of heroin is a non-violent crime, it is a serious crime given the threat heroin currently poses to public health, which the trial court also noted at sentencing.

As to defendant's background, the PSI report reflects that defendant had a long and varied criminal history, beginning in 1966 with possession of a stolen vehicle.   Defendant also had a prior conviction of selling heroin from 1971 and a prior 1974 conviction of armed robbery, a crime of violence, and was sentenced to thirty-seven years in the Department of Corrections. Defendant was released in 1992.   Five years later, in 1997, defendant was arrested and pled guilty to third offense driving while intoxicated, and so despite serving a substantial amount of time, defendant nonetheless recommenced his criminal activity.   In 1999, defendant was arrested; in 2000, he pled guilty to distribution of crack cocaine.   Then, in 2004, defendant pled guilty to theft of goods.   As previously mentioned, defendant pled guilty in March of 2014 to attempted possession with intent to distribute heroin and received a ten-year sentence in the Department of Corrections, six of which were suspended, and he was ordered to serve five years active supervised probation upon his release.   Defendant was arrested for this offense on October 20, 2016.

Considering only defendant's criminal history, defendant is an eighth felony offender, including one crime of violence.   He has served decades in the Louisiana Department of Corrections and has received the benefits of probation and parole, yet continued to engage in criminal activity. Therefore, the record does not support the conclusion that rehabilitation is likely at this point in defendant's life.   Although defendant argues *Mosby*, *Ellis*, and *Hall*, *supra*, on appeal as support that because he is elderly, he should receive a more lenient sentence, this ground was waived by his failure to assert it before the trial court.   Nonetheless, unlike those other defendants, the record shows that defendant is a career criminal who has not refrained from engaging in crime.   Therefore, both *Mosby* and *Hall*, *supra*, are distinguishable.   *Ellis*, *supra*, is distinguishable on the grounds that here, the

trial court ordered the preparation of a PSI report, which it fully considered in sentencing defendant.    The trial court also gave the proper weight to considering the nature of distribution of heroin, given the current threat it poses to public safety.    *See Ellis, supra.*

[6] It is further noted that evidence at trial established that defendant had previously given cash to Mr. Brown for items so that Mr. Brown could buy drugs, and thus, defendant seems to have facilitated other drug transactions by giving money to drug users.

Although the PSI indicates that defendant had a heroin addiction, the record does not support a conclusion that defendant's drug distribution business was fueled by his own drug-addiction.[7]    *See e.g. Ellis,* 190 So.3d at 375 ("Whether a defendant's crimes were fueled by his or her own drug-addiction (i.e., needing money to support addiction) is often considered during sentencing in our jurisdiction.").    The PSI report indicates that defendant has never been gainfully employed, and several of defendant's prior convictions involved drug distribution.    Defendant's daughter testified that she was present at his house on the date of the arrest to lend him money because he did not have any.    The PSI also reflects that defendant last completed the fourth grade, cannot read or write, and is disabled and unable to work. Therefore, it appears that defendant's motivation for selling drugs was not solely to fuel his drug addiction, but also provided his financial support.

[7] Defendant argues that his addiction to heroin should be considered as a factor in deciding whether this Court should grant a downward departure of his sentence.

As previously noted, the evidence at trial also showed that defendant had a prior conviction of attempted possession with the intent to distribute heroin in March of 2014.    Detective Tabora testified that during that incident, a struggle occurred with defendant, who was then about sixty-five years old, to recover aluminum tinfoil packets from his person.    Defendant attempted to eat the packets, and additional tinfoil packets were found in defendant's room pursuant to a search warrant.    Therefore, despite his age and ill health, defendant engaged in a physical confrontation with officers.    Following this conviction, defendant again began to engage in drug activity at the same residence with his brother.    Therefore, the record shows that defendant has a long history of criminal activity despite efforts to rehabilitate him with incarceration or periods under state supervision.

Lastly, we find that the sentence imposed is similar to those sentences imposed for similar crimes by this and other courts.    In *State v. Robinson,* 50,090 (La. App. 2 Cir. 9/30/15), 179 So.3d 675, 680-81, *writ denied,* 15-2047 (La. 11/29/16), 210 So.3d 803, the Second Circuit upheld the defendant's mid-range fifty-year second felony offender sentence at hard labor for his conviction of possession with intent to distribute heroin.    The defendant had a criminal history spanning thirty years, sold heroin, and noted that rehabilitation was not "a realistic goal for him."    *Id.*

In *State v. Henderson*, 38,536 (La. App. 2 Cir. 8/18/04), 880 So.2d 169, 170-72, *writ denied*, 04-2508 (La. 4/29/05), 901 So.2d 1061, the defendant received a sentence of thirty years at hard labor for one count of distribution, which he argued was excessive.    The Second Circuit upheld the sentence, noting that the defendant was a fourth felony offender with prior convictions for possession of stolen treasury checks, simply burglary, and distribution of cocaine, which weighed heavily in its decision to uphold the imposition of the maximum sentence.    The court also found no abuse of the trial court's discretion in imposing the sentence, as it believed that the defendant was likely to commit further offenses if placed on probation, and a lesser sentence would have deprecated the seriousness of the offense.    *Id.*

In *State v. St. Amant*, 14-607 (La. App. 5 Cir. 3/11/15), 169 So.3d 535, 538-39, 544-46, the defendant was thirty-six years old and had no history of violent offenses when he was convicted of three counts of distribution of heroin and received twenty years on each count.    This Court found that defendant's sentences were not excessive as the facts demonstrated that the defendant sold drugs through the use of several middlemen; he had prior convictions for possession of cocaine; and he received an enhanced sentence significantly less than the maximum sentence of one hundred years.    *Id.*

In conclusion, because of defendant's extensive criminal history, the seriousness of the offense of distribution of heroin to public safety, and defendant's refusal to refrain from criminal conduct despite multiple convictions, we find that defendant's sentence does not shock the sense of justice and is supported by the record.    Accordingly, the trial court did not abuse its broad sentencing discretion in sentencing defendant to twenty-five-years imprisonment in the Department of Corrections.    This assignment of error is without merit.[8][26]

> [8] It is also noted that the State could have filed a habitual offender bill against defendant but did not.

The Louisiana Supreme Court likewise denied relief.

To the extent Taylor contends his sentence is excessive under Louisiana law or that the trial court failed to comply with state sentencing rules, his claim is not cognizable in this federal proceeding.    *Smith v. Cain*, 253 F.3d 700, 2001 WL 498441, at *1 (5th Cir. Apr. 9, 2001).    These alleged errors cannot be remedied in a federal habeas corpus proceeding.

---

[26] *Taylor*, 258 So. 3d at 221-27; State Rec., Vol. 4 of 6.

*See, e.g.*, *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own sentencing procedures is not reviewable by federal habeas corpus.... [T]his Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.").

As for his claim that his sentence is excessive under federal law, the Eighth Amendment prohibits sentences that are grossly disproportionate to the crime committed.   *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) (rejecting a proportionality challenge where the defendant was sentenced to two consecutive terms of 25 years to life for two felony counts of petty theft for stealing $150.00 worth of videotapes); *Solem v. Helm*, 463 U.S. 277, 291-92 (1983) (holding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100"); *Rummel v. Estelle*, 445 U.S. 263 (1980) (rejecting a proportionality challenge where the defendant, who had three prior non-violent felony offenses, had been sentenced to life imprisonment under a recidivist statute following his conviction for obtaining $120.75 by false pretenses); *see also McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992).    As the Supreme Court recognized in *Lockyer*, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case."   *Lockyer*, 538 U.S. at 72-73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (rejecting a proportionality challenge for sentence of life in prison without parole for the possession of more than 650 grams of cocaine)).

In determining if a sentence is greatly disproportionate, the Fifth Circuit framework

dictates that courts first "make a threshold comparison of the gravity of the offense against the severity of the sentence." *McGruder v. Puckett*, 954 F.2d at 316. "Only if we infer that the sentence is grossly disproportionate to the offense will we then ... [ ] compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions." *Id.* If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. *Harmelin*, 501 U.S. at 1005 ("[I]ntrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."); *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997), *overruled in part on other grounds by United States v. O'Brien*, 560 U.S. 218, 130 S.Ct. 2169, 176 L.Ed.2d 979 (2010). The Fifth Circuit applies this framework using *Rummel* as "a benchmark for claims of disproportionate punishment under the Eighth Amendment." *Id.* at 943. As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 22 (2003) (quotation and citations omitted); *Lockyer*, 538 U.S. at 77 (quotation and citations omitted).

Taylor's situation does not qualify as an extraordinary case where the sentence is unconstitutionally disproportionate to the crime. He was convicted of distribution of heroin in violation of La. Rev. Stat. § 40:966(A). At the time of his commission of the offense, a person convicted under that provision faced a term of imprisonment at hard labor for not less than 10 nor more than 50 years, at least 10 years of which was to be served without benefit of probation or suspension of sentence and a possible fine of not more than

$50,000.00.    La. Rev. Stat. §40:966(B)(4)(A).    Taylor's 25-year sentence, a mid-range

sentence, falls within the limits set by the Louisiana legislature.    Generally, a sentence

within the limits imposed by statute is neither excessive not cruel and unusual under the

Eighth Amendment.    This is so because substantial deference is accorded to the legislature

as it, and not the courts, possess the broad authority to determine the types and limits of

punishments for crimes.    *Hamdalla v. Vannoy*, Civ. Action No. 18-3348, 2018 WL 11295985

at *20 (E.D. La. October 12, 2018), *adopted*, 2021 WL 949681 (E.D. La. Mar. 12, 2021).

Prior to sentencing Taylor, the trial court reviewed the presentence investigation

report and noted the maximum penalty of 50 years.[27]    Before imposing the 25-year

sentence, the trial court expressed as follows:

> For an eighth felon, I think the recommended sentence is pretty lenient.
> I was going to give him 30.    But I'm going to come down – there are two
> things that I don't think are good in our community:    And that's drug dealers
> and violent offenders.    And so, this is lenient, in my mind, for an eighth felony
> offender.    And I suspect that it was lowered based on his health and age.[28]

The Louisiana Fifth Circuit Court of Appeal highlighted factors the following factors to

support a finding that a sentence of 25 years was proportionate and warranted for this

crime:

- Taylor and his brother were well-known distributors of heroin from their
  residence;

- Taylor had a 2014 conviction for attempted possession with the intent to
  distribute heroin;

- Distribution of heroin, while a non-violent crime, is a serious crime posing a
  threat to public health;

---

[27]  State Rec., Vol. 4 of 6, Sentencing Transcript, p. 9, 9/12/17.

[28]  *Id.*

- Taylor had a long criminal history commencing in 1966 and was an eighth felony offender with prior offenses for possession of a stolen vehicle, selling heroin, armed robbery, third offense driving whole intoxicated, distribution of crack cocaine, theft of goods, and attempted possession with the intent to distribute heroin;

- Taylor had served substantial sentences in the past, and, despite decades of incarceration and periods under supervision, recommenced his criminal activity upon release.

- Given his history, rehabilitation was unlikely.

- The sentence imposed was similar to sentences imposed for similar crimes.[29]

Finally, a survey of the limited number of Louisiana cases in the public domain establishes that Taylor's sentence was not out of line with sentences imposed upon similarly situated defendants.    *See, e.g.*, *State v. Robinson*, 50,090-KA (La. App. 2 Cir. 9/30/15), 179 So. 3d 675, 680-81 (50-year sentence for 67 year old second-felony habitual offender with a 30-year criminal history charged with possession with intent to distribute heroin was not excessive); *State v. Henderson*, 38,536-KA (La. App. 2 Cir. 8/18/04), 880 So. 2d 169, 171-72 (30-year sentence for 48 year old with a substantial criminal record charged with distribution of cocaine was not excessive).

This case simply does not qualify as a rare situation in which the difference between the crime and the sentence was unconstitutionally disproportionate.    Taylor fails to demonstrate that the adjudication of his excessive sentence claim was contrary to or involved an unreasonable application of clearly established Supreme Court law. Accordingly, he is not entitled to relief on the excessive sentence claim

## B.    Ineffective Assistance of Counsel (Claims One, Three & Four)

---

[29] *Taylor*, 258 So. 3d at 225-26; State Rec., Vol. 4 of 6.

In claim one, Taylor asserts that he was denied effective assistance of counsel due to his trial counsel's failure to file a motion for reconsideration of sentence or a motion for downward departure.    In claim three, Taylor asserts that his trial counsel was ineffective in failing to investigate the case, impeach State witnesses, hire a chemist to prove that one packet of narcotics contaminated the others, and move for a new trial or post-verdict judgment of acquittal.    Finally, in claim four, Taylor claims ineffective assistance of appellate counsel for failing to challenge on appeal the sufficiency of the evidence on appeal and the admission of evidence of his prior drug conviction.

On direct appeal, the Louisiana Fifth Circuit found that Taylor had not supported his claim that he received ineffective assistance of counsel at sentencing.[30]    The district court rejected Taylor's claims that his trial and appellate counsel rendered ineffective assistance raised in his application for post-conviction relief.[31]    The Louisiana Fifth Circuit Court of Appeal denied Taylor's related writ application.[32]    The Louisiana Supreme Court denied writs finding "Applicant fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)."[33]

### 1.    Effective Assistance of Counsel

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel.    Specifically, a petitioner seeking relief must

---

[30]    *Taylor*, 258 So.3d at 227-29; State Rec. Vol. 4 of 6.

[31]    State Rec., Vol. 5 of 6, Order Denying Supplemental Application for Post-Conviction Relief, 6/29/21.

[32]    *State v. Taylor*, 21-KH-597, 10/12/21.

[33]    *State v. Taylor*, 2021-KH-01931 (La.2/22/22), 333 So. 3d 438.

demonstrate both deficient performance by counsel and that the deficient performance prejudiced his defense.    *Strickland*, 466 U.S. at 697.    A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).    If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' "    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694; *see also Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).    Furthermore, "[t]he petitioner must

'affirmatively prove,' and not just allege, prejudice."    *Day v. Quarterman*, 566 F.3d 527, 536

(5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).    In this context, a reasonable

probability is "a probability sufficient to undermine confidence in the outcome."    *Cullen v.

Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and the

petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance" and might be considered

sound trial strategy.    *Strickland*, 466 U.S. at 689 (citation and internal quotation marks

omitted).

On habeas review, the United States Supreme Court has clarified that, in applying

*Strickland*, "[t]he question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom."    *Harrington*, 562 U.S at 105.    The *Harrington* Court

went on to recognize the high level of deference owed to a state court's findings under

*Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential,
> and when the two apply in tandem, review is doubly so.    The *Strickland*
> standard is a general one, so the range of reasonable applications is
> substantial.    Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness under §
> 2254(d).    When § 2254(d) applies, the question is not whether counsel's
> actions were reasonable.    The question is whether there is any reasonable
> argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations and quotation marks omitted).

Accordingly, scrutiny of counsel's performance under § 2254(d) is "doubly

deferential."    *Cullen*, 563 U.S. 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413

(2009) ).    The federal courts must look at counsel's performance under the *Strickland*

standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 129 S.Ct. at 1419 n. 2).    Furthermore, the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689–90); *see also Matheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Because the state courts rejected Taylor's ineffective-assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

### 2.    Ineffective Assistance of Counsel at Sentencing (Claim One)

Taylor claims he was denied effective assistance of counsel because his trial counsel failed to file a motion for downward departure and a motion for reconsideration of sentence.

In the last reasoned opinion, the Louisiana Fifth Circuit considered this claim on direct appeal and rejected it.    The court explained:

> In this assignment of error, defendant argues that his trial counsel was ineffective in failing to preserve the grounds to challenge his twenty-five-year sentence for distribution of heroin and in failing to file a motion to reconsider sentence and/or a motion for downward departure after he received what was essentially a life sentence.    He asserts that there was a reasonable probability that he would have received a lesser sentence if trial counsel had

not performed deficiently in arguing the facts of the case at sentencing.    He contends that he was prejudiced by trial counsel's deficiency because the sentence imposed is unconstitutionally excessive.

The State responds that although written motions for reconsideration or for downward departure were not filed, trial counsel argued defendant's age and failing health as factors to be considered by the trial court before the sentence was imposed.    Thus, the State contends that it is unlikely that the trial court would have granted such motions even if made.    Further, the State asserts that even without the filing of such motions, defendant did not lose his right to have review of his sentence for unconstitutional excessiveness on appeal.    It concludes that trial counsel's performance did not fall below the minimum standards, and defendant has not shown how, but for any alleged errors, his sentence would have been any different.

Under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel.    *State v. Casimer*, 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141.    To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).    Under the *Strickland* test, the defendant must show: (1) that counsel's performance was deficient; that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense.    *State v. Dabney*, 05-53 (La. App. 5 Cir. 6/28/05), 908 So.2d 60, 63.    An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *State v. Serio*, 94-131 (La. App. 5 Cir. 6/30/94), 641 So.2d 604, 607, *writ denied*, 94-2025 (La. 12/16/94), 648 So.2d 388.    To prove prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different.    *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, rather than on direct appeal, so as to afford the parties an adequate record for review.    *State v. Robertson*, 08-297 (La. App. 5 Cir. 10/28/08), 995 So.2d 650, 659, *writ denied*, 08-2962 (La. 10/9/09), 18 So.3d 1279.    However, when the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.    *State v. Grimes*, 09-2 (La. App. 5 Cir. 5/26/09), 16 So.3d 418, 426, *writ denied*, 09-1517 (La. 3/12/10), 28 So.3d 1023.    Further, the Louisiana Supreme Court has held that La. C.Cr.P. art. 930.3, which sets forth the grounds upon which post-conviction relief may be granted, "provides no basis for review of claims of excessiveness or other sentencing error post-conviction."    *State ex rel. Melinie v. State*, 93-1380 (La.

1/12/96), 665 So.2d 1172 (per curiam ).    An ineffective assistance of counsel at sentencing claim is not cognizable in post-conviction proceedings when the sentence imposed by the trial judge is within the authorized range of the sentencing statutes.    *See State v. Cotton*, 09-2397 (La. 10/15/10), 45 So.3d 1030, 1031 (per curiam ).    Accordingly, this Court will address the assignment of error.

Generally, the defendant's failure to make a specific objection at the time of sentencing or to file a written motion to reconsider sentence precludes review of a sentence on appeal.    *State v. Fisher*, 03-326 (La. App. 5 Cir. 7/29/03), 852 So.2d 1075, 1084, *writ denied*, 03-2545 (La. 5/14/04), 872 So.2d 510.    However, this Court routinely reviews sentences for unconstitutional excessiveness even in the absence of the defendant's timely objection or the filing of a motion to reconsider sentence.    *Id.*    Therefore, trial counsel's failure, in this case, to object on certain grounds or to file a motion to reconsider sentence did not prejudice defendant by denying him such review.    *See State v. Lewis*, 09-783 (La. App. 5 Cir. 5/28/10), 43 So.3d 973, 989.

Although the grounds asserted on appeal for challenging defendant's sentence were not preserved for appeal, we may consider his specific objections to the sentence in order to properly assess his claim of ineffectiveness of counsel.    *See State v. King*, 00-1434 (La. App. 5 Cir. 5/16/01), 788 So.2d 589, 593, *writ denied*, 01-2456 (La. 9/20/02), 825 So.2d 1157 (where this Court considered the defendant's unpreserved argument that the trial court failed to articulate reasons for his sentence under La. C.Cr.P. art. 894.1 in order to assess his claim of ineffective assistance of counsel).

The mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel.    *State v. Fairley*, 02-168 (La. App. 5 Cir. 6/26/02), 822 So.2d 812, 816, writ denied, 03-1427 (La. 4/23/04), 870 So.2d 290.    A defendant must also "show a reasonable probability that, but for counsel's error, his sentence would have been different."    *Id.*

Although appellate counsel argues that trial counsel was ineffective in failing to state any certain grounds after the trial judge noted her objection to the sentence and by not filing a motion to reconsider sentence, the record indicates that prior to sentencing, trial counsel appealed to the trial court for leniency when sentencing defendant.    Trial counsel specifically asked the trial court to consider defendant's age and history of mental illness, addiction, and the physical infirmities he suffered with at the time of trial.    She also argued that even imposition of the ten-year minimum sentence would result in a tremendous monetary burden on taxpayers in paying for defendant's future medical costs.    Therefore, the record is clear that trial counsel argued for the imposition of a lenient sentence given those same factors now

advanced by defendant in this appeal, defendant's age and health.    Further, the trial judge who sentenced defendant presided over the entire trial and heard all of the evidence.    The trial judge reviewed the PSI report prior to sentencing, and she lowered the sentence she originally set out to impose upon seeing the recommendation in the PSI report.

Accordingly, there is no showing that the trial judge would have deviated from the sentence she imposed or would have granted a motion to reconsider sentence if trial counsel had made formal motions.    Accordingly, we find that defendant has not supported his claim that he received ineffective assistance of counsel at sentencing.    This assignment of error is without merit.[34]

Initially, under Louisiana law, a trial judge "has the option, indeed the duty, to reduce [a mandatory] sentence" if he or she finds that the mandatory sentence "makes no measurable contribution to acceptable goals of punishment or that the sentence amounted to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime."    *State v. Dorthey*, 623 So.2d 1276, 1280 (La. 1993) (quotation marks omitted).    A petitioner must show he was prejudiced by his counsel's failure to move for a downward departure.    *Matthews v. Cain*, 337 F. Supp. 3d 687, 711 (E.D. La. 2018).

"The failure to file a motion to reconsider sentence does not by itself constitute ineffective assistance of counsel.    In order to prevail, the petitioner must show a reasonable probability that, but for counsel's error, his sentence would have been different."    *Mazique v. Robinson*, Civ. Action No. 17-6675, 2017 WL 6628234, at *10 (E.D. La. Oct. 25, 2017) (citing *Green v. Cain*, Civ. Action No. 97–3206, 1998 WL 259970, at *7 (E.D. La. May 19, 1998)), *adopted*, 2017 WL 6624031 (E.D. La. Dec. 28, 2017).

While Taylor claims his counsel failed to move for a downward departure, the Court

---

[34]    *Taylor*, 258 So 3d at 227-28; State Rec. Vol. 4 of 6.

notes that at the sentencing hearing, defense counsel stated as follows:

> And even if just the mandatory minimum sentence is imposed, considering Mr. Taylor's age and his serious health problems, such a sentence will result in him spending the rest of his life in prison, such a sentence will also cost the tax payers a tremendous amount of money in medical costs to care for Mr. Taylor in prison.
>
> It just seems to me that we should be saving rooms in our overcrowded prisons for violent criminal instead of sending ill old men to prison for the rest of their lives.
>
> And, Judge, in support of my argument, I ask that the medical summary that I provided to probation Officer Tripkovich, Ms. Cullen, and the Court on August 9th, 2017, be placed in the record as it was not referenced at all in the presentence investigation that was prepared by Mr. Tripkovich.    It outlines the serious, serious health issues that Mr. Taylor suffers from and also discusses his history of mental illness and addiction.[35]

Defense counsel concluded, "I ask that Your Honor consider all of this and be lenient with Mr. Taylor."[36]    Thus, while defense counsel did not file a motion for a downward departure, she appeared to argue for a below-guideline sentence.    That request was implicitly denied. It is, however, true that she did not move for reconsideration of the sentence imposed.

Even if the Court were to assume that counsel performed deficiently in failing to file a motion for a downward departure and in not filing a motion to reconsider sentence, Taylor's ineffective assistance claim still fails because he cannot show that he was prejudiced as a result.    Taylor fails to present any evidence that his sentence would have been different had counsel filed a motion for downward departure and moved for reconsideration. Further, there is no reason to believe that the state trial court would have been disposed to alter the sentence.

---

[35] State Rec., Vol. 4 of 6, Sentencing Transcript 9/12, 17, at p. 6.

[36] *Id.*

At sentencing, in addition to the previous statements, defense counsel argued:

Mr. Taylor is a 70-year-old man with a fourth grade education,    He has a long history of mental illness and addiction.    He's also suffering from congestive heart failure, hypertension, afib, coronary artery disease, and Hep-C.

Now, while it is in fact true that Mr. Taylor has prior convictions, the crime at issue was not a crime of violence and he didn't sell drugs to anyone.

Mr. Taylor simply handed his brother what was alleged to be an extremely small amount of heroin when his brother unexpectedly asked him for it.

The video evidence in this case proved that Tyrone Taylor, the brother, was the dealer, not Darrell Taylor.

I'm not saying that the evidence didn't prove that Darrell was a user, because it clearly did, but it did not show that he was a dealer.    And, of course, he was convicted of Distribution of Heroin.

When all things are considered in this case, it just seems cruel and unusual to send Mr. Taylor to prison for the rest of his life for this crime.[37]

The state trial court, in sentencing Taylor to a term of imprisonment of twenty-five years, stated:

For an eighth felon, I think the recommended sentence is pretty lenient. I was going to give him 30.    But I am going to come down – there are two things that I don't think are good in our community:    And that's drug dealers and violent offenders.    And so, this is lenient, in my mind, for an eighth felony offender.    And I suspect it was lowered based on his health and age."[38]

The state trial judge presided over the trial and sentencing hearing.    She was well aware of the facts of the case as well as Taylor's advanced age and ill-health and appeared to take the latter into consideration in sentencing Taylor to 25 years rather than the 30-year sentence she had planned to impose.    Based on the trial judge's comments, there is no

---

[37]  *Id.*, at pp. 5-6.

[38]  *Id.*, at p 9.

reason whatsoever to believe that she would have been moved to change his sentence based on a written motion for downward departure or a motion to reconsider. Further, Taylor was afforded appellate review of his sentence for unconstitutional excessiveness despite counsel's failure to file a motion to reconsider sentence. In such circumstances, counsel is not ineffective for failing to file such a motion. *See, e.g.*, *Williams v. Kent*, Civ. Action No. 16-6902, 2017 WL 2920013, at *22 (E.D. La. Apr. 11, 2017) ("Counsel was not ineffective in failing to pursue a motion he likely determined to be futile or meritless, and which would not have been successful or changed the outcome of the sentencing chosen by the Court."), *adopted*, 2017 WL 2911588 (E.D. La. July 7, 2017).

Taylor has not shown a reasonable probability that, had counsel filed a motion for a downward departure or a motion to reconsider sentence, the motions would have been granted. Having failed to show prejudice, this claim should be denied.

### 3. Failure to Investigate, Impeach Witnesses, Call an Expert, and Move for a New Trial or Post-Verdict Judgment of Acquittal (Claim 3)

Taylor next claims that his trial counsel failed to adequately investigate his claim that he was not part a willing participant of the drug transaction. He claims that had his counsel interviewed witnesses, she would have been able to rebut the State's case. He further faults his trial counsel for failing to secure an expert to testify regarding the cross-contamination of foil packets containing heroin. He generally claims that his counsel failed to impeach the State's witnesses. Finally, he claims that his trial counsel was ineffective in failing to file a motion for new trial and/or for post-judgment of acquittal based on insufficient evidence.

The Louisiana Fifth Circuit denied these claims as follows:

First, relator claims that his trial counsel failed to "properly investigate

the Petitioner's argument that he was not a part of this alleged drug transaction" and that "h was not a willing participant" in the transaction.    At trial, the state introduced a digital video recording of a controlled buy with a confidential informant, who purchased seven tinfoil packets of heroin from relator and his brother.    Relator's defense at trial focused on the argument that he was a mere bystander and that he was not a knowledgeable or willing participant in the drug transaction.    However, in his APCR and in his writ application to this Court, relator does not state with specificity how trial counsel could have further investigated this defense and fails to meet his burden to show entitlement to post-conviction relief on this ground.    *See* La.Cr.Cr.P. art 930.2.

Relator next claims that his trial counsel was ineffective for failing to retain an expert to testify as to the possibility of contamination of the tinfoil packets.    Relator maintains counsel should have retain an expert to challenge the state's forensic drug analyst who testified that the seven packets tested positive for heroin with no indication of cross-contamination between the seven packets.    Relator contends that the state only showed the possibility that he handled one of the seven packets, but that "the 7 bags of what was alleged to be heroin were all placed in the same bag and stored for a few weeks before being sent to the lab."    Relator claims his counsel should have retained an independent chemist or expert to testify concerning contamination of the packets and that cross-examination of the state's expert was not sufficient.

There is a strong presumption that counsel's conduct will fall within the wide range of reasonable professional assistance.    *State v. Gorman*, 11-491 (La. App. 5 Cir. 2/14/12), 88 So. 3d 590, 600.    Generally, the decision to call or not call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective assistance of counsel.    *State v. Allen*, 06-778 (La. App. 5 Cir 4/24/07), 955 So. 2d 742, 751, *writ denied sub nom. State ex rel. Allen v. State*, 2008-2432 (La. 1/30/09), 9999 So. 2d 754.

In his application to this Court, relator does not name an expert or produce any evidence to show that another expert would have testified that the singular packet handled by relator did no contain heroin but rather was contaminated by the other packets handled by his brother.    Thus, we find relator has failed to meet his burden to prove that the outcome of the proceedings would have been any different with the testimony of an independent chemist.    *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Defendant further alleges that both his trial and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence presented at trial.    Relator claims his trial counsel was ineffective for failing to move for a new trial based on the insufficiency of the evidence to conduct presented at

trial.    He further claims his appellate counsel was ineffective for failing to assign as error on appeal the insufficiency of the evidence presented at trial.

The question of the sufficiency of the evidence presented to prove the essential elements of the crime charged is considered part of this Court's errors patent review.    *State v. Camp*, 446 So.2d 12309 (La. 1984); *State v. McIntyre*, 496 So.2d 1204, 1206-07 (La. App. 5 Cir,. 1986); *see also State v. Mosley*, 08-1319 (La. App. 5 Cir 5/26/09), 16 So 3d 398, 403; *State v. Boiteux*, 11-191 (La. App. 5 Cir. 12/13/11), 81 So. 3d 123, 127.    Both the Louisiana Supreme Court and this Court have conducted patent error reviews for sufficiency of evidence even where the defendant fails to raise the issue on appeal.    *State v. Turner*, 05-60 (La. App. 5 Cir. 5/31/05), 904 So.2d 825, 829; *State v Raymo*, 419 So.2d 858 (La. 1982).

This Court, in affirming relator's conviction on appeal, determined that the evidence presented at trial, including a digital videorecording of the controlled buy, showed the relator and his brother participated in a controlled buy with an informant wherein relator handed his brother a tightly wrapped foil package containing heroin for the purpose of handing that packet to the informant.    This Court found that the testimony and other evidence at trial demonstrated that Relator and his brother were well-known heroin dealers in the neighborhood and that relator participated as a principal in the controlled buy in this case.

Therefore, relator has failed to make the requisite showing to support his claim of ineffective assistance of trial or appellate counsel because the assignment of error that defendant alleged should have been argued by counsel on appeal and relief upon by trial counsel in a motion for new trial – the sufficiency of the evidence - is without merit and the result of his conviction and appeal would not have been any different had counsel challenged the insufficiency of the evidence.[39]

The Louisiana Supreme Court found Taylor failed to meet the *Strickland* standard.[40]

With respect to an attorney's duty to investigate, the controlling law provides:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.    In other words, counsel has a duty to make reasonable

---

[39]  *State v. Taylor*, 21-KH-597, 10/12/21, at pp. 2-3.

[40]  *State v. Taylor*, 2021-KH-01931 (La. 2/22/22), 333 So. 3d 438.

> investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. at 690-91). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown and that the outcome would have been different as a result. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696).

Taylor presents only self-serving allegations in support of his contention that counsel was ineffective for failing to adequately investigate the evidence. He presents no objective evidence at all to establish that his counsel in fact failed to conduct a proper investigation. Here, the record shows that counsel actively engaged in discovery and that discovery was provided to defense.[41]

Taylor argues that the surveillance video shows he was not a willing participant in the drug transaction. He further claims that, had his counsel contacted the witnesses who were present at the home at the time of transaction, they would have testified that he, Taylor, had nothing to do with the drug deal. He also claims that his counsel should have secured an expert to testify regarding the cross-contamination of seven foil packets of heroin that were stored in the same plastic bag for weeks before testing.

As the United States Fifth Circuit Court of Appeals has explained:

Claims that counsel failed to call witnesses are not favored on federal

---

[41] *See* State Rec., Vol. 1 of 6, Docket Master, 12/10/16 (ordering the state to provide discovery); Motion to Reveal the Identity of the Confidential Informant and for Kyles, Brady and Giglio Material, 1/3/17; State Rec., Vol. 2 of 6, Hearing Transcript, 1/10/17; Hearing Transcript, 5/2/17.

> habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). For the following reasons, Taylor has failed to establish ineffective assistance for failing to call these witnesses to testify under *Strickland*.

Initially, Taylor fails to identify the missing witnesses. Further, he provides no evidence, such as affidavits from any of the proposed witnesses, demonstrating that they were available and would have testified in a manner beneficial to the defense. Therefore, Taylor failed to meet his burden of proof with respect to this claim. *See, e.g.*, *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled

32

witnesses, on that issue."); *Combs v. United States*, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director, TDCJ-CID*, No. 06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

While Taylor claims an expert witness would have testified that cross-contamination of the foil packets occurred, he has not identified any particular expert who was available to testify in that manner or any other manner favorable to a particular defense.    Taylor simply provides self-serving, speculative, and conclusory allegations that an unidentified expert witness would have in fact testified and would have done so in a manner favorable to the defense.    As a result, he cannot establish that his counsel was ineffective for failing to present the testimony of a purely theoretical expert.    *Anthony v. Cain*, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue").    For this reason, his claim regarding his counsel's failure to retain an expert fails.

Taylor next generally claims that his counsel was ineffective in failing to impeach the State's witnesses.    The method and scope of cross examination is a type of trial strategy for which counsel is granted reasonable latitude.    *See United States v. Octave*, Crim. Action No. 12-205, 2015 WL 6620117, at *6 (E.D. La. Oct. 30, 2015) (citing *Pape v. Thaler*, 645 F.3d 281, 291) (5th Cir. 2011).    The federal courts have made clear that "[t]he decision whether to

cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005); *accord Lewis v. Cain*, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 F. App'x 835 (5th Cir. 2011); *Williams v. Cain*, Civ. Action Nos. 06-02224, 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), *aff'd*, 359 F. App'x 462 (5th Cir. 2009); *Parker v. Cain*, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).    The United States Supreme Court has cautioned courts not to second guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.    *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.    It is irrelevant that another attorney might have made other choices or handled such issues differently.    As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case.    Even the best criminal defense attorneys would not defend a particular client in the same way."    *Id.*

In the instant case, Taylor simply has not met his burden with respect to this claim. A review of the trial transcript shows that defense counsel in fact extensively and effectively cross-examined each of the State's witnesses and attacked their credibility.[42]

On cross-examination, defense counsel questioned Schulz about the possibility of cross-contamination of the seven foil packages.    Schulz testified that the foil packages

---

[42]    State Rec., Vol. 3 of 6, Trial Transcript (con't), 6/19/17, at pp. 304-18, 335-42; Trial Transcript, 6/20/17, at pp. 33-51, 82-107, 159-174; State Rec., Vol. 4 of 6, Trial Transcript (con't), 6/2017, at pp. 175-88.

could contaminate one another if they were open and in the same bag.[43]    He admitted that he did not know how the foils were handled before he received them, and that he did not know if any were opened for a field test and then put in the bag together.[44]    He further admitted that was contamination was possible if one of the foils had been opened for a field test, and placed in the bag with the other foils, but opined that it was highly unlikely if the other foil packets remained closed.[45]

Defense counsel also attacked Danny Brown's character on cross-examination. Brown admitted that he was discharged from the military due to bad conduct.[46]    He admitted to his long criminal history.[47]    Brown further admitted that his probation had been extended due to violations.[48]    He admitted that he could have been charged with violating his probation when he was found to be in possession of a crack pipe.[49]    He did not dispute that he was paid over $2000 for assisting law enforcement.[50]    Brown candidly admitted that Tyrone Taylor, not Darrell Taylor, gave him a baggy of six foil packets, and that Darrell Taylor personally never gave him anything.[51]    He also testified that Darrell Taylor

---

[43]  State Rec., Vol. 3 of 6, Trial Transcript (con't), 6/19/17, at 335.

[44]  *Id.*

[45]  *Id.*, at pp. 340-41.

[46]  *Id.*, at p. 84.

[47]  *Id.*, at pp. 85-89.

[48]  *Id.*, at pp. 82-83.

[49]  *Id.*, at p. 83.

[50]  *Id.*, at p. 91.

[51]  *Id.*, at pp. 97-98.

was not involved in the second and third buys.[52]

Defense counsel attacked the accuracy of Detective Tabora's report, the chain of custody form, and his thoroughness of the investigation.[53]    Tabora admitted that he failed to include Tyrone Taylor's name of on the chain of custody form.[54]    He also admitted to an errors in his sworn affidavit.[55]    Tabora further admitted that the drugs and paraphernalia confiscated during a search of the Taylors' home were found in Tyrone Taylor's room.[56]

Lieutenant Shuff admitted on cross-examination that Brown had a financial interest in assisting law enforcement by participating in controlled buys of heroin as he was being financially compensated.[57]    He testified that Brown was paid $2,355.[58]

Defense counsel also attacked the witnesses' credibility in her closing argument. She pointed out that Brown is a career criminal and had a motive to lie.[59]    She speculated that he may have tampered with the evidence.[60]    She pointed out inconsistencies and incorrect information in Detective Tabora's reports, his sworn affidavit, and his testimony.[61]

---

[52]  *Id.,* at pp. 103-05.

[53]  *Id.,* at pp. 159-74.

[54]  *Id.,* at pp. 165, 170.

[55]  *Id.,* at p. 174; State Rec., Vol. 4 of 6, Trial Transcript (con't), 6/20/17, at pp. 175-76.

[56]  State Rec., Vol. 4 of 6, Trial Transcript (con't), 6/20/17, at pp. 183-84.

[57]  *Id.,* at p. 49.

[58]  *Id.*

[59]  *Id.,* at pp. 232 –33, 236.

[60]  *Id.,* at pp. 234-35.

[61]  *Id.,* at pp. 236-38.

She claimed that he was either "out to get" Taylor or "was just running a sloppy investigation."[62]

It is clear from the record that defense counsel attempted to discredit the State's witnesses through cross-examination in an effort to raise doubt about the reliability of their testimony and in support of Taylor's claim of actual innocence.    The testimony was presented to the jury, which as the trier of fact, weighed and considered the testimony.    The fact that the jury did not believe the defense does not render counsel's performance constitutionally deficient.    *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").    "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (citations omitted).

Taylor has failed to establish that the denial of relief by the state courts on this ground was contrary to or an unreasonable application of *Strickland*.    He is not entitled to relief on this claim.

Taylor's final claim of ineffective assistance of trial counsel is based on counsel's failure to file a motion for new trial and/or post-verdict judgment of acquittal based on insufficient evidence.    Because this claim is brought to this court as a question of effective assistance of counsel, *Strickland* supplies the standard of review, not *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).    In *Jackson*, the United States Supreme Court held that, in assessing such a claim of insufficient evidence, "the relevant question is whether,

---

[62] *Id.*, at p. 237.

after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Id.* at 319, 99 S.Ct. 2781.    Accordingly, "[t]he *Jackson* inquiry 'does not focus on whether the

trier of fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit.' "    *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.

2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993))

(emphasis added).    Even if the Court were to consider *Jackson* in terms of whether counsel

was deficient, Taylor has failed to meet that burden.

Taylor was charged with and convicted of distribution of heroin.    To prove

distribution of heroin, the State must show "(1) 'delivery' or 'physical transfer;' (2) guilty

knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact

identity of the controlled dangerous substance."    *State v. Thomas,* Nos. 2002-KA-1561,

2002-K-0809 (La. App. 4 Cir. 2/19/03), 841 So.2d 45, 49.

Distribution of a controlled dangerous substance is a general intent crime.    *State v.

Pierre*, 03–KA–1306 (La. App. 5 Cir. 2/23/04), 869 So.2d 206, 211.    General criminal intent

is present "whenever there is specific intent, and also when the circumstances indicate that

the offender, in the ordinary course of human experience, must have adverted to the

prescribed criminal consequences as reasonably certain to result from his act or failure to

act."    La. Rev. Stat. § 14:10(2).    General intent may be inferred from the circumstances of

the transaction and proven by direct or circumstantial evidence.    *See State v. Brokenberry*,

41,481-KA (La. App. 2 Cir. 11/3/06), 942 So.2d 1209; *State v. Culp*, 44,270–KA (La. App. 2d

Cir. 7/15/09), 17 So.3d 429.    Determination of whether the requisite intent is present in a

criminal case is exclusively for the trier of fact.    *State v. Brown*, No. 47,050–KA (La. App. 2

Cir. 5/16/12), 92 So.3d 579, 585 (citing *State v. Huizar*, 414 So.2d 741 (La. 1982)).

In this case the jury heard the testimony of Brian Schulz, a forensic drug analyst for the Jefferson Parish Sheriff's Office Crime Lab, who tested the substances in each foil packet and testified that they tested positive for heroin.[63]    He testified that "[g]iven the condition of the foils when they were received, I don't think that the chance of contamination between them would be very high."[64]

Lieutenant Shuff identified that confidential informant as Danny Brown.[65]    Shuff explained that Brown was working off a charge, but was also receiving financial compensation for his assistance.[66]

Danny Brown, the confidential informant, testified that he told officers that he knew two persons, "Meatman" and "Dip," who were selling heroin.[67]    He had met "Dip," who he identified as Darrell Taylor, when Brown was selling merchandise from his home.[68]    Brown made his first purchase of six packets of heroin from Meatman on September 21, 2016.[69] When Brown asked for something extra, Meatman turned to Darrell Taylor and asked him to go get him another one.[70]    Darrell Taylor retrieved a seventh similarly packaged packet and

---

[63]  State Rec., Vol. 3 of 6, Trial Transcript (con't), 6/19/17, at pp. 331, 334.

[64]  *Id.* at p. 334.

[65]  State Rec., Vol. 3 of 6, Trial Transcript, 6/20/17, at p. 28.

[66]  *Id.*, at p. 31.

[67]  *Id.*, at p. 69.

[68]  *Id.*, at p. 70.

[69]  *Id.*, at pp. 71-73.

[70]  *Id.*, at p. 73.

gave it to Meatman who gave it to Brown.[71]

Detective Tabora testified that Brown's person and vehicle were searched prior to the controlled buy.[72]    Tabora equipped Brown with a digital video and audio recorder and transmitter.[73]    After the controlled buy, Tabora met with Brown, who relinquished a clear plastic bag containing foil packages.[74]    Tabora reviewed the video and recognized Darrell Taylor.[75]    The video from September 21, 2016 was played for the jury.[76]    Tabora testified that Darrell Taylor previously pled guilty in 2013 for attempted possession of heroin with the intent to distribute.[77]

To the extent that Taylor is arguing that the jurors should not have found the State's witnesses credible, that simply is not for this Court to say.    Credibility determinations are the province of the jurors, and a federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility.    *See Schlup v. Delo*, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ("[U]nder *Jackson* [*v. Virginia*] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict.");

---

[71]    *Id.*, at pp. 74, 79.

[72]    *Id.*, at pp. 133-35.

[73]    *Id.*, at pp. 135-36.

[74]    *Id.*, at pp. 139-43.

[75]    *Id.*, at pp. 147-48.

[76]    *Id.*, at pp. 150-51.

[77]    *Id.*, at pp. 154-58.

*McCowin v. Scott*, No. 93-5340, 24 F.3d 240, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); *Phillips v. Cain*, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. April 11, 2012), *adopted*, 2012 WL 2565025 (E.D. La. July 2, 2012); *Picou v. Cain*, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

The evidence at trial was more than sufficient to prove to a reasonable jury each element of distribution of heroin by Taylor.    Taylor fails to show both that his trial counsel was ineffective in failing to file a motion for new trial or for post-verdict judgment of acquittal or resulting prejudice.    He is not entitled to relief as to this claim.

### 4.    Ineffective Assistance of Appellate Counsel (Claim 4)

Taylor claims that his appellate counsel was ineffective in failing to assign certain claims on appeal.    He specifically asserts that his appellate counsel should have raised sufficiency of the evidence.    He also claims that his appellate counsel should have assigned as error on appeal the admission of evidence relating to his prior conviction.

The state trial court denied relief without explanation.    The Louisiana Fifth Circuit explained:

> Relator further asserts that his appellate counsel was ineffective for failure to assign as error on appeal the trial court's denial of his motion to exclude any evidence or testimony concerning relator's 2014 conviction for attempted possession with intent to distribute heroin.    Upon review of the record, it appears that relator's trial counsel stipulated to the fact that relator previously pled guilty to attempted possession with intent to distribute heroin in violation of La.R.S. 40:966(A).[2]    Nevertheless, a review of the record reflects that the state intended to introduce evidence of relator's guilty plea to rebut relator's bystander defense that he was not a knowledgeable participant in the drug transaction.
>
> [2] First, as it relates to relator's claim of ineffective assistance of appellate counsel, the record on appeal reflects that relator's trial counsel stipulated to the fact that relator pled guilty in 2014 to attempted possession of heroin,    Therefore, any complaint on appeal would have been fruitless as defense counsel stipulated to that fact at trial.

While still prohibiting the state from introducing evidence of other crimes, wrongs, or acts to show a probability the accused committed the charged crime because he is a person of criminal or bad character, the rule articulated in La. CE. art. 404(B)(1) allows admission of such evidence for other purposes, *i.e.*, to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.    *State v. Robinson*, 14-453 (La. App. 5 Cir. 12/23/14), 167 So.3d 793, 797.    Such evidence may be used to rebut a defendant's defense if used to show absence of mistake or accident, or to show knowledge of other unique circumstances surrounding the alleged crime. *See State v. McCasland*, 16-1178 (La. App. 1 Cir. 4/18/17), 218 So.3d 1119, 1133, *writ not considered*, 17-0823 (La. 3/2/18), 269 So.3d 706; *see also State v. Scott*, 09-1658 (La. 10/22/10), 48 So.3d 1080, 1085.    Moreover, in this case, the trial judge gave the jury a limiting instruction that the evidence could only be considered for the limited purpose to show relator's guilty knowledge or absence of mistake or accident.    Under these circumstances, we find that relator has failed to meet his burden to prove ineffective assistance of counsel relating to the introduction of evidence of his 2014 guilty plea.;    This assignment has no merit.[3][78]

> [3] Moreover, introduction of other crimes evidence is subject to a harmless error analysis.    *State v. Lagarde*, 07-288, (La. App. 5 Cir 10/30/07), 970 So.2d 1111, 1123; *State v. Jones*, 08-20 (La App. 5 Cir 4/15/08), 985 So.2d 234, 244.    An error is harmless when the verdict is "surely unattributable to the error."    *State v Nelson*, 02-65 (La. App. 5 Cir. 6/26/02), 822 So.2d 796, 805, *writ denied*, 02-2090 (La. 2/21/03), 837 So.2d 627.    In the present case, in addition to the liming instruction provided to the jury, the state presented sufficient evidence of relator's guilt including audio and video recording of the controlled buy involving relator and his brother.    Therefore, we find that the jury's verdict was surely unattributable to any alleged error in admission of other crimes evidence.    Thus, relator cannot prove that the outcome of the proceedings would have been any different had counsel raised an objection to the other crimes evidence.    *See also State v. Robinson*, 14-453 (La. App. 5 Cir. 12/23/14), 167 So.3d 793, 798.

The Louisiana Supreme Court found that Taylor failed to meet the *Strickland* standard.

Criminal defendants are entitled to effective assistance of counsel in their first appeal of right.    *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.    *Smith v. Robbins*, 528 U.S. 259, 285

_____

[78]

(2000); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1997).    In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant." *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).    When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal." *Duhmel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992).    However, failing to raise every meritorious claim on appeal does not make counsel deficient.    *Green v. Johnson*, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) ).    Similarly, failing to raise a frivolous claim "does not cause counsel's performance to fall below an objective level of reasonableness." *Id.* at 1037.    Courts give great deference to professional appellate strategy and applaud counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues...." *Jones v. Barnes*, 463 U.S. 745 (1983).    This is true even where the weaker arguments have merit. *Id.* at 751–52. Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal. *See, e.g.*, *Diaz v. Quarterman*, 228 F. App'x 417, 427 (5th Cir. 2007); *see also Smith v. Robbins*, 528 U.S. 259, 288 (2000).

The Court has already determined above that Taylor failed to demonstrate that his trial counsel was ineffective in failing to raise sufficiency of the evidence in a post-trial motion or any resulting prejudice.    For the same reasons, Taylor fails to show that sufficiency of the evidence was a "clearly stronger" issue than those raised by appellate counsel.    He therefore is not entitled to relief as to this claim.

Taylor's final claim is that his appellate counsel was ineffective for failing to assign as

43

error on appeal the admission of evidence relating to his 2014 prior conviction.    Taylor has

failed to establish that his claim would have been successful on appeal.

Prior to trial, the State filed a notice of intent to present evidence of Taylor's prior

conviction.[79]    Defense counsel filed a motion *in limine* to exclude the evidence.[80]    The trial

court held a hearing on the motions, and denied the defense's motion *in limine*.[81]    The trial

court found that the State could use the prior conviction to show intent and knowledge, and

that probative value was not outweighed by the prejudicial effect of the evidence.[82]

At trial, Detective Tabora testified that he was involved in an investigation of Darrell

Taylor in August 2013, at which time he recovered foil packets from Taylor's person and his

bedroom.[83]    On cross-examination, defense counsel elicited testimony from Tabora that he

tased Taylor to assist in his arrest.[84]    Tabora also testified on cross-examination that Taylor

pled guilty to a 2013 charge for attempted possession of heroin with the intent to distribute,

although he admitted that the substances were never sent to the laboratory for testing.[85]

After Tabora's testimony concluded, defense counsel stipulated that Taylor pled guilty on

---

[79]    State Rec., Vol. 1 of 6, Notice by the State of Louisiana of its Intention to Introduce Evidence Pursuant to LA. C.E. Art. 404(B), 5/7/17.

[80]    State Rec., Vol. 1 of 6, Motion *in Limine* to Exclude Evidence Pursuant to La. Code of Evidence Articles 403 and 404(B), 5/23/17.

[81]    State Rec., Vol. 2 of 6, Hearing Transcript, 6/1/17.

[82]    *Id.*, at pp. 20-21.

[83]    State Rec., Vol. 3 of 6, Trial Transcript, 6/20/17, at 154-57.

[84]    State Rec., Vol. 4 of 6, Trial Transcript (con't), 6/20/17, at 186-87.

[85]    *Id.*, at p. 187.

March 25, 2014, to a charge of attempted possession with intent to distribute heroin.[86]

Initially, as indicated, defense counsel both elicited evidence regarding Taylor's prior conviction and stipulated to the fact that Taylor had a 2014 conviction for attempted possession with the intent to distribute heroin.    "When a defendant unsuccessfully seeks to exclude certain evidence at a pre-trial motion, but at trial agrees to its introduction, he waives his prior objection and loses the right to present the issue on appeal."    *State v. Lane*, 20-KA-137 (La. App. 5 Cir. 12/23/20), 309 So. 3d 886, 910 (citations omitted).    Without the claim being properly preserved for review on direct appeal, appellate counsel was not in a position to raise the claim on appeal.    Appellate counsel cannot be considered ineffective "in declining to raise an unreviewable issue."    *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001); *accord Weatherspoon v. Cockrell*, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011) ("[A]ppellate counsel was precluded from raising this claim because there had been no contemporaneous objection at trial.    Therefore, appellate counsel was not deficient for failing to raise the issue on appeal, and petitioner suffered no prejudice. Accordingly, petitioner's instant claim fails because he cannot show a reasonable probability that he would have prevailed on appeal if the issue had been raised." (citations omitted) ), *adopted*, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); *Arceneaux v. Cain*, Civ. Action No. 06-3964, 2009 WL 917429, at *10 (E.D. La. Mar. 31, 2009) ("Where appellate review of a claim would be barred due to the absence of a contemporaneous objection, appellate counsel is not ineffective for failing to assert the claim."); *Taylor v. Holliday*, Civ. Action No. 06–4118, 2008 WL 5146505, at *8 (E.D. La. Dec. 4, 2008) (petitioner failed to demonstrate ineffective

---

[86] *Id.*, at p. 197-98.

assistance of appellate counsel when issue was not preserved for appeal).

The state court's denial of relief on this claim was not contrary to, or an unreasonable application of *Strickland*.     Taylor is not entitled to relief on this claim.

### RECOMMENDATION

**IT IS RECOMMENDED** that Darrell Taylor's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[87]

New Orleans, Louisiana, this ___18th___ day of _____October_____, 2022.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[87]   *Douglass* referenced the previously applicable 10-day period for the filing of objections.     Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to 14 days.